## Edgewood Amusement Company, Inc. Appeal

*Robert V. Moser*, for appellant.

*Morley W. Baker*, for Commonwealth.

BOWMAN, J., March 9, 1964. — Edgewood Amusement Company, Inc. (appellant) has appealed [1] from the action of the Bureau of Employment Security of the Department of Labor and Industry in disallowing appellant's petition for reassessment of specified contributions theretofore assessed against appellant with respect to wages paid to certain persons employed by appellant. The assessment in question was made July 9, 1957, in the amount of $286.85 principal contributions, with interest thereon of $81.14 calculated to date of assessment. Appellant's petition to this court, however, relates only to some of the assessed contributions and only that portion of the contested assessment to which objection has been made in this appeal will be considered. [2]

After this appeal was perfected in October 1958, neither party took steps to have the same heard until November 1962, when the department obtained a rule on appellant to show cause why the appeal should not be dismissed for want of prosecution. An answer to the rule was filed in December 1962, and again the matter lay dormant until it was listed for argument on the rule and answer in January 1964. At argument, however, the parties stipulated that the matter should be disposed of on its substantive merits. It will be so disposed of, and there is no dispute as to the facts, leaving only the legal issue.

Appellant, in operating a swimming pool for profit during seasonable weather, employed, among other persons, several individuals as lifeguards. During the periods they were so employed, these individuals were also under contract with, and receiving compensation

---

[1] As authorized by section 304(c) of the Unemployment Compensation Law, of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §784.

[2] Section 304(c) supra, permitting the court to consider only the objections specified in the appeal petition.

from, a local school district as professional employes, teachers, and as professional employes of a school district enjoyed the tenure provisions of the Public School Code of 1949, as amended, protecting them from discharge or suspension as such professional employes except for specified reasons.[3] It is not clear whether these individuals at any time during the periods in question were also actually engaged in their teaching responsibilities. A determination of this fact is not, however, necessary to resolve this matter.

Equally unclear is appellant's legal position. In its appeal from the department, in its brief and at oral argument appellant cites the declaration of public policy or purpose section of the Unemployment Compensation Law [4] with particular reference to the clause declaring its intent to avoid the spread of indigency; makes reference to the tenure provisions of the Public School Code of 1949, supra, and from this would appear to conclude that these individuals are not employes *of appellant* within the meaning of the Unemployment Compensation Law, for the reason that (a) if discharged by appellant, they would not be entitled to unemployment compensation benefits because of their continuing employment as professional employes by the school district, or (b) they are not indigent because of such continuing employment by the school district and, hence, should not be entitled to any such benefits as a matter of policy. Except for the "authority" already referred to, appellant offers no statutory or decisional support for this novel argument.

Initially, it should be noted that persons employed as professional employes by a school district are not *covered* employes within the meaning of the Unemploy-

---

[3] Sections 1121-24, Act of March 10, 1949, P. L. 30, as amended, 24 PS §§11-1121 to 1124.

[4] Section 3, Unemployment Compensation Law, supra, 43 PS §752.

ment Compensation Law, which, in section 4 (1) (4) (6), 43 PS §753, excludes from the meaning of "employment" services performed by a person in the employ of a political subdivision. Not being covered employes, they would not be eligible for compensation benefits based upon wages received in such noncovered employment in the event of their unemployment.[5] It should also be noted that while the tenure provisions of the Public School Code of 1949 afford a high measure of job protection to professional employes of school districts, their employment in such capacity is neither guaranteed nor absolute,[6] and it is entirely possible for such a professional employe to be discharged or suspended from employment at any particular time and hence to become unemployed, although not entitled to unemployment compensation benefits based upon such employment because of the noncovered nature thereof.

Thus, if appellant's argument is grounded upon the proposition that the individuals in question have absolute job security in their teaching positions which insulated them against job loss or "indigency" resulting from loss of job, its argument falls upon this demonstrated false premise. Not only do they lack absolute job security, but also the likelihood of their becoming "indigent" is increased because of their ineligibility for compensation benefits with respect to such employment.

A more fundamental reason exists, however, for denying this appeal. The Unemployment Compensation Law may aptly be termed a statute having two somewhat related but nevertheless distinct and separate

---

[5] Section 401 of the Unemployment Compensation Law, supra, 43 PS §801, establishing minimum qualifications as to wages received in *covered* employment for compensation benefit eligibility.

[6] See sections 1121-24, supra, setting forth specific reasons for dismissal or suspension.

purposes. The one purpose is that of creating a fund out of which compensation benefits may be paid to persons who are unemployed through no fault of their own. To accomplish this purpose, the act imposes contributions upon all employers, as defined in said act, which contributions are paid into the fund created for the payment of compensation benefits to eligible persons. It is significant to note that these contributions are "taxes upon the *right to employ*": York School District Appeal, 367 Pa. 279 (1951) ; Pittsburgh Petition, 376 Pa. 447 (1954).

Section 4 of the act[7] broadly defines "employer", "employe" and "employment" without any exclusion or exemption granted for, or in reference to, any job protection features of such employment which might arise out of other statutory law or as a result of a labor-management contract. Similarly, section 301 of the act[8] imposes the tax (contributions) upon each employer on the "wages paid by him for employment". The imposition of the tax is absolute and without regard to the economic status of the employe or to any job protection which he may happen to enjoy by reason of such employment or any other employment.

The other purpose or objective of this act is to afford to certain persons unemployment compensation benefits, and the provisions thereof establishing eligibility, amount and duration of such benefits accomplish this purpose. None of the many and complex provisions relating to benefits provide for, or even suggest, the conclusion which appellant would have the court reach. While it is true that a fully employed person is not eligible for unemployment compensation benefits whether so employed in covered or noncovered employment, this is so because of the *fact* of employment and

[7] 43 PS §753.
[8] 43 PS §781.

not the *reason* for being so employed. On the other hand, these same provisions permit a person who has theretofore been employed under covered employment to be eligible for unemployment compensation benefits even though he is not then totally unemployed. For example, sections 4(u) and 404(d) [9] make specific provisions for the calculation and payment of partial benefits to persons who are partially employed, and this is so regardless of the covered or noncovered nature of the partial employment.

Notwithstanding these specific and absolute provisions of the act imposing the tax upon employers for their right to hire, the broad definitions of "employer" and "employment", and the fact that the provisions of the act in accomplishment of its two distinct purposes evidences no dependency of the tax payable by the employer upon the eligibility of persons for benefits, appellant would find a legislative intent in the declaration of public policy section of the act [10] that as to these individuals it is not an employer subject to the tax. And it would have this court so conclude, even though it admits that it hired and paid these individuals who were under its supervision and control and, hence, clearly within the definition of "employment" as contained in the act, section 4(l) [11] of which provides that "employment" shall mean ". . . all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, . . ."

We cannot agree with appellant, and if any legislative intent can be gleaned from the legislative declaration of policy as to the issue here raised, it would refute rather than support appellant in its statement of con-

---

[9] 43 PS §753 and §804.

[10] 43 PS §751.

[11] 43 PS §753.

cern for possible indigency growing out of unemployment. For the foregoing reasons, it is our opinion that the wages paid by appellant to the individuals in question are subject to the tax (contributions) prescribed by the act as appellant is the employer of such individuals within the meaning of said act. Accordingly, we make the following

*Order*

And now, March 9, 1964, the appeal of the Edgewood Amusement Company, Inc., is hereby dismissed; that portion of the assessment made against appellant by the Bureau of Employment Security which is the subject of this appeal is hereby sustained; the Department of Labor and Industry is directed to compute the assessment as herein affirmed, with interest to date of this order, and with notice to appellant's counsel submit an appropriate order for judgment within 20 days of this date.